IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 35547

| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, February 2009 |
| | ) | |
| v. | ) | 2009 Opinion No. 59 |
| | ) | |
| CHRISTOPHER ALLEN SANCHEZ, | ) | Filed: April 20, 2009 |
| | ) | |
| Defendant-Appellant. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Gooding County.  Hon. R. Barry Wood, District Judge.

District court order revoking probation and reinstating original sentence, <u>affirmed.</u>

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant.  Sarah Elizabeth Tompkins, Deputy State Appellate Public Defender argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent.  Jessica Marie Lorello, Deputy Attorney General argued.

_____

BURDICK, Justice

Appellant Christopher Allen Sanchez appeals from the district court order revoking his probation and reinstating his sentence.  The Idaho Court of Appeals reversed the district court's order and held that the court abused its discretion when it revoked Sanchez's probation.  This Court granted the State's petition for review of the decision of the Court of Appeals.  We affirm the district court's order revoking probation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Sanchez was charged with two counts of aggravated battery, possession of a controlled substance, possession of drug paraphernalia, obstructing and resisting an officer, and two counts of providing false information to law enforcement following the stabbing of two men in a bar parking lot.  He pled guilty to one count of aggravated battery.  Following his I.C.R. 11 plea agreement, Sanchez was placed on probation in May 2006.  Sanchez's suspended sentence was

1

15 years, with 10 years fixed. The terms of Sanchez's probation required him to "report as directed, including providing truthful and accurate documentation, whenever requested by the Idaho Department of Correction." In addition, at the time he was placed on probation, Sanchez had absconded from parole in California by coming to Idaho. Therefore, a special term of the Idaho probation stated: "This probation is specifically conditioned upon the Defendant's parole in California being revoked and the Defendant being jailed there."

Upon Sanchez's return to California, he was briefly incarcerated for his parole violation. He then began residing at a halfway house in California and, as required by his California parole officer, he attended classes from 8 a.m. to 3 p.m., five days a week, to work on rehabilitation. Sanchez admitted at his Idaho probation revocation hearing that he violated his California parole on one occasion by returning to the halfway house after curfew and that on a separate occasion his parole was revoked for seven months after he failed to attend a required batterer's treatment program.

In October 2006, the State recommended that the district court revoke Sanchez's probation, alleging Sanchez violated the terms and conditions of his probation by failing to report to his probation officer, not being employed, failing to pay restitution, and being released from prison by the justice system in California. The district court held an evidentiary hearing to determine whether the alleged violations had occurred, at which Sanchez's probation officer testified that Sanchez had initially made the required weekly telephone calls, but had not attempted to contact him after August 3, 2006. The officer attempted to contact Sanchez at the halfway house once, but was unable to reach him. He also contacted Sanchez's California parole officer, and testified that the parole officer had told him Sanchez had "absconded treatment" and been re-incarcerated for violating his California parole. The Idaho probation officer also testified that Sanchez had failed to pay the $100 interstate compact fee that would have allowed his probation to be transferred to the California Department of Corrections.

Sanchez testified at the hearing as well, and stated that he had been unable to contact his probation officer because the only phone available for outgoing calls at the halfway house was a pay phone. However, he testified he had made several attempts to contact his probation officer. He initially had a prepaid phone, but after using up the minutes, he could not afford a new one. Therefore, he attempted to contact his probation officer via third-party calls using his girlfriend's telephone. Sanchez stated that the last time he attempted to contact his probation officer through

a third-party call was on September 24, 2006, and he left a message when the officer was unable to take his call.

Following the evidentiary hearing, the district court found that Sanchez had violated his probation by failing to comply with his reporting requirements to his probation officer. The court specifically found that "the defendant is not in violation of the remaining allegations as set forth in the October 19, 2006 Department of Probation and Parole report." In a separate hearing, the district court elected to revoke Sanchez's probation and execute the original sentence based upon the previous finding that Sanchez had violated a probation term by failing to maintain adequate contact with his probation officer. The district court also stated that it had initially placed Sanchez on probation in the belief that his California parole would be revoked and he would be incarcerated there.

Sanchez appealed and the Idaho Court of Appeals reversed the district court's order, holding that the court abused its discretion when it revoked Sanchez's probation because (1) the record demonstrates that the alleged probation violation was not willful and, therefore, the court erred when it failed to apply the constitutionally mandated analysis for a non-willful violation, and (2) even assuming the violation was willful, the district court abused its discretion when it revoked probation because there was no indication that Sanchez's probation was not serving its rehabilitative purpose and sufficiently protecting society. This Court granted the State's petition for review of the decision of the Court of Appeals.

## II.  ANALYSIS

### A.  Standard of Review.

"In cases that come before this Court on a petition for review of a Court of Appeals decision, this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court." *State v. Oliver*, 144 Idaho 722, 724, 170 P.3d 387, 389 (2007). This Court will accept the district court's findings of fact unless they are clearly erroneous. *State v. Diaz*, 144 Idaho 300, 302, 160 P.3d 739, 741 (2007). However, this Court may freely review the district court's application of constitutional principles in light of the facts found. *Id*.

### B.  The district court did not abuse its discretion when it revoked Sanchez's probation.

Sanchez alleges that his probation violation was not willful because he could not pay to make the phone calls required to maintain contact with his probation officer. Therefore, the

3

district court was required to consider whether adequate alternative methods of punishing him were available prior to revoking his probation. In addition, Sanchez contends that even if his violation was willful, the district court abused its discretion when it revoked his probation. The Idaho Court of Appeals found that the "minor probation violation that [Sanchez] was found to have committed did not justify" revocation, and reversed the district court's decision. We affirm the district court's revocation of Sanchez's probation.

In reviewing a probation revocation proceeding, we use a two-step analysis. *State v. Knutsen*, 138 Idaho 918, 923, 71 P.3d 1065, 1070 (Ct. App. 2003). First, we ask whether the defendant violated the terms of his probation. *Id.* If it is determined that the defendant has in fact violated the terms of his probation, the second question is what should be the consequences of that violation. *Id.* "The determination of whether a probation violation has been established is separate from the decision of what consequence, if any, to impose for that violation." *State v. Thompson*, 140 Idaho 796, 799, 102 P.3d 1115, 1118 (2004).

**1. Sanchez violated his probation.**

For the first step, a district court's finding of a probation violation will be upheld on appeal if there is substantial evidence in the record to support the finding. *State v. Lafferty*, 125 Idaho 378, 381, 870 P.2d 1337, 1340 (Ct. App. 1994). This first step "involves a wholly retrospective factual question." *Morrissey v. Brewer*, 408 U.S. 471, 479 (1972). To comply with the principles of due process, "a court may revoke probation only upon evidence that the probationer has in fact violated the terms or conditions of probation." *Lafferty*, 125 Idaho at 381, 870 P.2d at 1340. In the event of conflicting evidence, we will defer to the district court's determinations regarding the credibility of witnesses. *State v. Knutsen*, 138 Idaho 918, 923, 71 P.3d 1065, 1070 (Ct. App. 2003).

There is substantial evidence in the record to support the district court's finding that Sanchez violated his probation by failing to report to his probation officer. Sanchez's probation officer testified that he instructed Sanchez to contact him weekly starting July 21, and as of August 3, he did not receive any further contact from Sanchez. The officer also tried calling Sanchez at the halfway house on one occasion but was not successful in contacting him. Sanchez testified that he had failed to contact his Idaho probation officer as required because the only phone available to him at the halfway house was the public pay phone. He stated that he had left messages with his officer by making third-party calls using his girlfriend's phone, and

4

that the last message he had left was on September 24, 2006. However, after reviewing his call logs, the officer testified that the last message he had received from Sanchez was on July 27, 2006.

As the Court of Appeals stated in *Knutsen*, when there is conflicting evidence from witnesses, we defer to the district court's determinations regarding credibility. Here, the district court heard from both Sanchez and the probation officer regarding the communications between the two, and Sanchez's failure to contact the officer. The probation officer required Sanchez to contact him once a week, and the district court determined that Sanchez had violated his probation by failing to do so. There is substantial evidence in the record to support the district court's finding that Sanchez violated his probation.

## 2. The district court did not abuse its discretion in revoking Sanchez's probation.

After the court has determined that the defendant has violated his probation, it must then go to the second step and determine whether to revoke or continue probation. *State v. Thompson*, 140 Idaho 796, 799, 102 P.3d 1115, 1118 (2004). A district court's decision to revoke probation will not be overturned on appeal absent a showing that the court abused its discretion. *Lafferty*, 125 Idaho at 381, 870 P.2d at 1340. In reviewing the court's discretionary decision, we conduct an inquiry to determine whether the court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with the applicable legal standards, and reached its decision by an exercise of reason. *Knutsen*, 138 Idaho at 923, 71 P.3d at 1070.

The applicable legal standard the district court must utilize in determining whether to revoke probation is based upon whether the violation was willful or non-willful:

> If a knowing and intentional probation violation has been proved, a district court's decision to revoke probation will be reviewed for an abuse of discretion. However, if a probationer's violation of a probation condition was not willful, or was beyond the probationer's control, a court may not revoke probation and order imprisonment without first considering alternative methods to address the violation.

*State v. Leach*, 135 Idaho 525, 529, 20 P.3d 709, 713 (Ct. App. 2001) (citations omitted). The district court simply found that Sanchez was "in violation of his probation for failing to maintain adequate contacts . . . ." We find that the district court did not articulate any finding of willfulness, but that this inquiry is irrelevant because the court satisfied the more stringent legal standard associated with non-willful violations.

5

Where a violation is determined to be non-willful a district court may not "revoke probation and order imprisonment without first considering alternative methods to address the violation." *Id.* Then:

> [o]nly if the trial court determines that alternatives to imprisonment are not adequate in a particular situation to meet the state's legitimate interest in punishment, deterrence, or the protection of society, may the court imprison a probationer who has made sufficient, genuine efforts to obey the terms of the probation order.

*Id.* The district court in *State v. Lafferty*, 125 Idaho 378, 870 P.2d 1337 (Ct. App. 1994) allowed the probationer thirty days to find a facility sufficiently secure to meet the court's concern for safety of the public, and then rejected the program the probationer suggested at the end of that time. The Court of Appeals determined that, because the district court considered alternatives and determined them to insufficiently protect the public, the court had acted within the boundaries of its discretion and consistently with the applicable legal standards. *Id*. at 383, 870 P.2d at 1342.

The district court did not err in revoking Sanchez's probation because it sufficiently considered alternative methods. The court had before it alternative options to imprisonment. Similar to *Lafferty*, the district court here was able to consider other facilities by looking at the program Sanchez was currently on with the California Department of Corrections. Sanchez had been living at a halfway house, attending daily classes, and was being supervised by a California parole officer. However, the district court determined this program was not sufficient to protect the public or provide for Sanchez's rehabilitation. Instead, the court made the following statement:

> Here we have a defendant who has a history of violence, history of drug dealing, a history of failing to report, absconding in California, who gets a sentence out of this court suspended on the promise that he would be incarcerated in California; is not incarcerated in—goes down there, gets incarcerated for a brief period, gets paroled.
>
> Paroled by those folks to a halfway house. Does not stay in the halfway house, has reporting problems there, apparently. But I know he has them here, because [the judge] has found that.
>
> And while on its face may appear to be a technical violation, in my view and finding and, in the exercise of discretion, is a far greater violation. I would have to find, Mr. Sanchez, that you're not supervisable in this community.

6

The court's decision also followed Sanchez's testimony about his highly supervised program and the classes he was taking.

Furthermore, the district court had extensive knowledge of Sanchez's background from the initial sentencing in 2006. In granting probation initially, the court stated that it was "with great reluctance" that it honored the plea agreement granting probation:

> So it's with great reluctance that I follow it, because of your history. You have a history of violence, long history of drugs and alcohol. You absconded California. You were in Idaho without permission. You have a gang history, being involved in a gang.
>
> This is an aggravated battery, a crime of violence, two people were cut; and you were a drug dealer in the past….
>
> Other matters that I look at here is this prior history of violence, including inflict [sic] corporal injury upon a spouse. There's a prior burglary.
>
> You tested positive for meth—I know you said someone put it in your drink—back in 2004. You absconding in California. You have been through a halfway house.

This is further evidence that the district court was aware that the halfway house program through California would not be sufficient to protect the public or provide for Sanchez's rehabilitation. Based upon Sanchez's history and background and the problems the court viewed him to be having with the alternatives to incarceration, the court was acting within the boundaries of its discretion and within the applicable legal standards when it revoked Sanchez's probation. Therefore, we affirm the district court's order revoking Sanchez's probation and reinstating his original sentence.

### III.  CONCLUSION

We affirm the district court's order revoking Sanchez's probation and reinstating his original sentence because the court acted within the boundaries of its discretion.

Justices J. JONES, W. JONES, HORTON and TROUT, J., PRO TEM, **CONCUR.**