## IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 43939-2016

STATE OF IDAHO,
)

Plaintiff-Respondent,
)

v.
)

WILLIAM DEE VAN KOMEN, JR.
)

Defendant-Appellant.
)

)

)

)

)

)

)

)

)

)

Boise, June 2016 Term

2016 Opinion No. 78

Filed: July 22, 2016

Stephen W. Kenyon, Clerk

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Kootenai County. Hon. John T. Mitchell, District Judge.

The judgment of the district court is vacated.

Maya P. Waldron, Deputy State Appellate Public Defender, Boise, argued for appellant.

Kenneth K. Jorgensen, Deputy Attorney General, Boise, argued for respondent.

EISMANN, Justice.

This is an appeal out of Kootenai County from an order relinquishing jurisdiction following a period of retained jurisdiction and requiring the defendant to serve a prison sentence because the defendant asserted his constitutional right to remain silent regarding an unrelated felony. We vacate the order of the district court and remand this case for further proceedings.

## I.
## Factual Background.

For the felony offense of possession of marijuana with the intent to deliver, the district court on June 17, 2010, sentenced William Dee Van Komen, Jr. ("Defendant") to five years in the custody of the Idaho Board of Correction, with the first two years fixed and the remaining three years indeterminate. The court retained jurisdiction over the case for 180 days.

When a district court sentences a defendant to prison and retains jurisdiction, the defendant is remanded to the custody of the Idaho Board of Correction and placed at a prison

facility operated by the Idaho Department of Correction. Prior to the termination of the period of retained jurisdiction, the court has the discretion to suspend the sentence and place the defendant on probation. If the period of retained jurisdiction expires without the court affirmatively suspending the sentence and placing the defendant on probation, the court loses jurisdiction, and the defendant remains committed to the custody of the Board of Correction. *State v. Taylor*, 142 Idaho 30, 31, 121 P.3d 961, 962 (2005).

When a district court sentences a defendant to prison and retains jurisdiction (typically called a "rider"), the Department assesses the defendant to determine his or her needs and places the defendant at an appropriate prison facility to receive intensive programming and education. During the rider, the Department can also assess the defendant's attitude and willingness to abide by required rules. Near the end of the rider, the Department submits a report to the sentencing court regarding the defendant's performance on the rider and the Department's recommendation regarding whether to suspend the sentence and place the defendant on probation. That recommendation is purely advisory and is not binding upon the court. *State v. Coassolo*, 136 Idaho 138, 143, 30 P.3d 293, 298 (2001).

On November 23, 2010, the district court held a "rider-review" hearing to determine whether to suspend Defendant's sentence. The Department and the prosecutor recommended that Defendant be placed on probation. The court agreed, and it suspended Defendant's sentence and placed him on probation for a period of five years. Defendant later admitted violating the terms of his probation, and on March 28, 2013, the court entered an order continuing Defendant on probation with an additional term that he successfully complete a specified rehabilitation program.

On August 26, 2013, the probation officer filed a report alleging that Defendant had violated three terms of his probation. Two of the terms allegedly violated were that Defendant "not associate with any individuals specified by your probation officer" and that he "submit to analysis of [his] blood, breath or urine at [his] own expense at the request of [his] probation officer or any law enforcement officer." In his report, the probation officer stated that Defendant was "having a relationship with a 16-year-old girl on juvenile probation" and that when questioned about the girl Defendant "admitted that the two were romantically involved, as well as using drugs together." The probation officer also wrote that Defendant's phone "contained

various pictures of the two of them together, including kissing and nude photos of [Defendant]" and that Defendant had failed to report for required drug testing.

At the arraignment on the alleged probation violations, Defendant admitted these two violations, and a third alleged violation was withdrawn. The district court revoked Defendant's probation, but again retained jurisdiction, this time for 365 days.[1] After announcing its decision, the court stated that because of the missed drug tests, it did not know whether Defendant had been clean and sober from drugs and alcohol. Defendant responded that he had been. The court then stated that it would order that Defendant have a polygraph examination to see if he had used drugs or alcohol or had engaged in sexual activity with the sixteen-year-old. The dialogue was as follows:

> THE COURT: I'm going to order that you be polygraphed on that issue, whether there's been any drug use or alcohol use since March 28th, 2013, and I'm going to order that you be polygraphed as to whether or not you had sexual activity of any kind with [the sixteen-year-old girl]. If you test deceptive as to either of those things, then I will likely impose the prison sentence, have you serve the rest of your time in prison regardless of whether you do well on the rider. If you want to change your story, now would be the time to do it. If you test deceptive after this on either of those two questions, I'll send you to prison. Do you want to talk to your attorney?
>
> THE DEFENDANT: Yes.
>
> [Defendant talks with attorney, and his attorney states that Defendant will agree to the polygraph.]
>
> THE COURT: Okay. Then you'll have to arrange for the polygraph, [defense counsel], and I'll need it before I have the rider review hearing, so either he's going to have to be polygraphed before he goes down or before he's transported or after he's transported back but before the hearing, so that will be up to you.

Defendant was transported to a prison facility to serve his rider.

On February 19, 2014, the district court held the "rider-review hearing," which is a term typically used for the hearing to determine whether to suspend a defendant's sentence at the conclusion of the period of retained jurisdiction. The Department of Correction recommended that Defendant be placed on probation, as did the prosecuting attorney and defense counsel.

---

[1] In 2010 the applicable statute had been amended to extend the period of retained jurisdiction to 365 days. Ch. 350, § 1, 2010 Idaho Sess. Laws 913, 913.

The district court then brought up the failure of Defendant to have a polygraph examination "to assess the truthfulness as to, one, no drugs or alcohol after March 28th, 2013, and the extent of sexual activity with [the sixteen-year-old girl]." Defense counsel told the court that he would advise Defendant to assert his Fifth Amendment rights with respect to his involvement with the girl because that could lead to additional charges. The court then ordered that it would relinquish jurisdiction and have Defendant serve the prison sentence because he had not had a polygraph test to assess the truthfulness of his assertion that he had not used drugs or alcohol after March 28, 2013, and to determine the extent of any sexual activity that Defendant had with the sixteen-year-old girl. The court stated:

> The reason that I am revoking your probation is you haven't done what I ordered you to do when I sent you on a rider, and that was to get a polygraph evaluation to assess both the truthfulness of no alcohol or drugs after March 28th, 2013, and the extent of any sexual activity with [the sixteen-year-old girl].

Defendant timely appealed.

The appeal was initially heard by the Idaho Court of Appeals, which affirmed the judgment of the district court on the ground that there was no Fifth Amendment violation because Defendant did not have a liberty interest in being placed on probation and the court's refusal to place Defendant on probation did not extend the length of Defendant's sentence. We granted Defendant's petition for review. In cases that come before this Court on a petition for review of a decision of the Court of Appeals, we do not review the decision of the Court of Appeals. We hear the case anew as if the appeal had initially come directly to this Court. *State v. Suriner*, 154 Idaho 81, 83, 294 P.3d 1093, 1095 (2013).

## II.
**Did the District Court Violate Defendant's Fifth Amendment Rights by Relinquishing Jurisdiction Because He Did Not Submit to a Polygraph Test to Determine Whether He Had Committed a Felony?**

In 1964, the United States Supreme Court held "that the Fifth Amendment's exception from compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgment by the States." *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). Defendant contends on appeal that the district court's action in refusing to place him on probation because he would not

4

submit to a polygraph examination regarding his sexual relationship with the sixteen-year-old girl violated his Fifth Amendment rights.

The privilege against self-incrimination "is not ordinarily dependent upon the nature of the proceeding in which the testimony is sought or is to be used. It applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it." *McCarthy v. Arndstein*, 266 U.S. 34, 40 (1924). "A defendant does not lose this protection by reason of his conviction of a crime; notwithstanding that a defendant is imprisoned or on probation at the time he makes incriminating statements . . . ." *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984). The State does not contend on appeal that Defendant could not validly assert his privilege against self-incrimination by refusing to answer questions regarding his sexual relationship with the sixteen-year-old girl.

At the time of the probation violation based upon his relationship with the girl, Defendant was twenty-two years of age. If he had penetrated, however slightly, her vaginal, oral, or anal opening with his penis, that would constitute the felony crime of rape, for which he could be sentenced from one year to life in the custody of the Idaho Board of Correction. I.C. §§ 18-6101(2), 18-6104. If he had committed a lewd or lascivious act on her body, that would constitute the felony crime of sexual battery of a child sixteen years of age, for which he could be sentenced to prison for life. I.C. § 18-1508A(1)(a), (4). If, with the intent of arousing, appealing to or gratifying his or her lust, passion, or sexual desires, he had solicited her to participate in a sexual act or had caused or had sexual contact with her not amounting to lewd conduct, that would also constitute the felony crime of sexual battery of a child sixteen years of age, for which could be sentenced to up to twenty-five years in prison. I.C. § 18-1508A(1)(b)–(c), (5).

The State contends that there is no violation of the Fifth Amendment unless the person actually answers the questions. That is not the law. "The Fifth Amendment protects against compelled self-incrimination." *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 286 (1998). "It does not preclude a witness from testifying voluntarily in matters which may incriminate him." *United States v. Monia*, 317 U.S. 424, 427 (1943). "[I]n the ordinary case, if a witness under compulsion to testify makes disclosures instead of claiming the privilege, the government has not 'compelled' him to incriminate himself." *Garner v. United States*, 424 U.S. 648, 654 (1976) (footnote omitted). Had Defendant submitted to the polygraph examination and made

incriminating statements, those statements may have been held not to have been compelled and therefore admissible in a subsequent criminal prosecution. *See Murphy*, 465 U.S. at 440.

Although Defendant did not have a liberty interest in having a rider review hearing or in being placed on probation at that hearing, *Coassolo*, 136 Idaho at 143, 30 P.3d at 298, that does not resolve the issue. In *McKune v. Lile*, 536 U.S. 24 (2002), a prisoner, who had been convicted of forcible sodomy, forcible rape, and forcible kidnapping, was ordered to participate in a prison treatment program a few years before his scheduled release to reduce his risk of reoffending. *Id.* at 29–30 (plurality opinion). Inmates participating in the treatment program were required to complete a sexual history form detailing all prior sexual activities, regardless of whether the activities constituted an uncharged sex offense. *Id.* at 30. A polygraph examination was used to verify the accuracy and completeness of an offender's sexual history, and the information disclosed was not privileged. *Id.* The prisoner was informed that if he did not participate in the program, his status would be changed, resulting in a curtailment of his visitation rights, earnings, work opportunities, ability to send money to family, canteen privileges, access to personal television, and other privileges. *Id.* at 30–31. In addition, he would be transferred to a maximum-security unit, where his movement would be more limited, he would be in a four-person cell rather than his two-person cell, and he would be in a potentially more dangerous environment. *Id.* at 31.

The prisoner refused to participate in the program on the ground that the required disclosures would violate his Fifth Amendment privilege against self-incrimination, and he obtained an injunction in federal court preventing the withdrawal of his privileges and transfer to a different housing unit. *Id.* On appeal, the judgment in his favor was reversed, *id.* at 48, but there was no majority opinion. Justice O'Connor concurred in the result, *id.*, and Justices Stevens, Souter, Ginsburg, and Breyer dissented, *id.* at 54. In their analyses, these justices did not analyze the issue as being whether the prisoner's penalties for exercising his right to remain silent resulted in the deprivation of an existing liberty interest.

Justice O'Connor viewed the issue as being whether the pressure imposed by the penalties is likely to compel a person to be a witness against himself, *id.* at 49 (O'Connor, J., concurring), and she concluded that consequences facing the prisoner if he refused to speak were not serious enough to compel him to be a witness against himself, *id.* at 50. Significantly for this case, Justice O'Connor stated that "imposition of [longer incarceration] as a penalty for

refusing to incriminate oneself would surely implicate a 'liberty interest.'" *Id*. at 52. The plurality opinion also stated: "In the present case, [the prisoner]'s decision not to participate in the Kansas SATP did not extend his term of incarceration. Nor did his decision affect his eligibility for good-time credits or parole." *Id*. at 38. In making this comment, the plurality apparently thought these factors were important.

The dissenting justices held that the threatened loss of privileges if the prisoner refused to incriminate himself violated his Fifth Amendment rights. *Id*. at 56 (Stevens, J., dissenting). The dissenters stated, "Without requiring the deprivation of any other liberty interest, we have found prohibited compulsion in the threatened loss of the right to participate in political associations, forfeiture of government contracts, loss of employment, and disbarment." *Id*. at 58 (citations omitted). They held that "the right to remain silent is itself a liberty interest protected by that Amendment." *Id*. at 57. The dissenters would hold that any penalty for refusing to answer questions that would incriminate the prisoner violated his Fifth Amendment rights. They stated: "Until today the Court has never characterized a threatened harm as 'a minimal incentive.' Nor have we ever held that a person who has made a valid assertion of the privilege may nevertheless be ordered to incriminate himself and sanctioned for disobeying such an order." *Id*. at 54.

Thus, the opinions of O'Connor and the four dissenters would hold that any penalty for asserting the right to remain silent that was likely to compel an incriminating statement violates the Fifth Amendment. As the Court held in *Lefkowitz v. Cunningham*, 431 U.S. 801 (1977), "[O]ur cases have established that a State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself." *Id*. at 805.

In the present case, the district court certainly could have elected not to hold a rider review hearing for Defendant, and it could have elected to relinquish jurisdiction based upon Defendant's prior history and apparent attempt to communicate with the sixteen-year-old while on his rider. However, the court in its own words relinquished jurisdiction solely because Defendant refused to waive his Fifth Amendment right and answer questions that could incriminate him and result in new felony charges. The court's action violated Defendant's Fifth Amendment rights. We therefore remand this case for redetermination of whether to suspend Defendant's sentence and place him on probation.

The next issue is whether that issue should be decided by a different judge. With respect to the sixteen-year-old girl, Defendant had already admitted the probation violation which consisted of associating with an individual prohibited by his probation officer. The only apparent purpose for seeking to interrogate Defendant about the extent of his sexual relationship with the girl was to obtain information that could lead to new felony charges. Because the district court clearly violated Defendant's right against self-incrimination in seeking to force him to incriminate himself regarding those potential charges, a new judge must be appointed on remand. The court's action in this case appeared vindictive because of Defendant's refusal to incriminate himself regarding the extent of his sexual activity with the girl.

### III.
### Conclusion.

We remand this case for a redetermination before a different judge as to whether Defendant's sentence should be suspended and he should be placed on probation.

Chief Justice J. JONES and Justices BURDICK, W. JONES and HORTON **CONCUR.**